IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CRAIG B. and ANNAMARIE PRESTON**, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-2395-L** |
| | § | |
| **SETERUS, INC.; FANNIE MAE** | § | |
| **(FEDERAL NATIONAL MORTGAGE** | § | |
| **ASSOCIATION); MCCARTHY,** | § | |
| **HOLTHUS & ACKERMAN, LLP;** | § | |
| **MORTGAGE ELECTRONIC** | § | |
| **REGISTRATION SYSTEMS, INC.;** | § | |
| **MERSCORP, INC.; and** | § | |
| **CTX MORTGAGE COMPANY, LLC,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Motion to Dismiss"), filed July 24, 2012. After carefully considering the

motion, briefing, pleadings, and applicable law, the court grants in part and denies in part

Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 6).

**I.     Procedural and Factual Background**

This is a mortgage foreclosure case that was originally brought by Plaintiffs Craig B. Preston

and Annamarie Preston ("Plaintiffs") on July 3, 2012, in the 134th District Court, Dallas County,

Texas, against Defendants Seterus, Inc. ("Seterus"); Federal National Mortgage Association ("Fannie

Mae"); McCarthy, Holthus & Ackerman, LLP ( the "McCarthy law firm"); Mortgage Electronic

Registration Systems, Inc. ("MERS"); MERSCORP, Inc. ("MERSCORP"); and CTX Mortgage

Company, LLC ("CTX") (collectively, "Defendants").

In July 2007, Plaintiffs bought a home located at 671 Senda, #47, Irving, Texas, 75039 (the

"Property"). To finance the purchase of the Property, Plaintiffs signed a promissory note ("Note")

in the amount of $287,939 with CTX as the lender. The Note was secured by a deed of trust ("Deed

of Trust") on the Property that lists MERS as the nominee and beneficiary.[1] According to Plaintiffs,

the Note changed hands a number of times as a result of assignments by MERS or others. Plaintiffs

allege that the Note was sold to a Wall Street trust, which resulted in the securitization[2] or

conversion of the Note to a mortgage-backed security as part of a securitized trust that Plaintiffs refer

to as a "Real Estate Mortgage Investment Conduit" or "the REMIC." Pls.' Compl. 6.  Plaintiffs

allege that the REMIC subsequently assigned the Note to Fannie Mae, and when the Note was

assigned to Fannie Mae, it "passed through MERS." *Id.* 15.  Plaintiffs brought this action in state

court after Defendants initiated foreclosure proceedings on the Property.  It is unclear from Plaintiffs'

Original Complaint [sic] ("Complaint") in state court, however, which of the Defendants initiated

the foreclosure proceedings or when the foreclosure took place. Likewise, although Plaintiffs allege

that their mortgage was transferred a number of times, little or no details regarding the alleged

assignments and assignees are included in the Complaint.

---

[1] The Note and Deed of Trust are attached to the Complaint.

[2] "Securitization" refers to the "process of pooling loans and selling them to investors on the open market." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011).

In their Complaint, Plaintiffs assert claims against all Defendants for wrongful foreclosure; alleged violations of section 12.002 of the Texas Civil Practices and Remedies Code; unjust enrichment; negligent and fraudulent misrepresentation; slander of title and suit to quiet title; negligent supervision; and violations of the Federal Debt Collection Practices Act ("FDCPA") and the Residential Settlement and Procedures Act ("RESPA"). At the heart of most of Plaintiffs' claims is their contention that Defendants lacked legal authority to transfer or assign the Note and Deed of Trust and foreclose on the Property. Plaintiffs dispute whether MERS had legal authority to make any assignments under the Note and Deed or Trust and contend that even if the initial transfer by MERS was valid, subsequent assignments were invalid because the securitization of the Note caused the Note and Deed of Trust to become split or separated or, alternatively, the initial assignment was to a nonmember of MERS.[3]

Plaintiffs seek relief in the form of a temporary restraining order to prevent foreclosure on the Property and Plaintiffs' eviction from the Property; a declaratory judgment under Texas law stating that the foreclosure sale is null and void and unenforceable; actual and statutory damages under the FDCPA; costs of court; rescission of the foreclosure, mortgage and Note in the form of a clear title; damages for alleged unfair and deceptive practices; return of all payments by Plaintiffs under the Note, including the down payment; and prejudgment and postjudgment interest.

On July 17, 2012, Defendants removed the case to federal court on the basis of federal question jurisdiction. On July 24, 2012, Defendants moved to dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before considering the Motion

---

[3] Plaintiffs' contention that MERS lacked authority to make assignments after the Note or Deed of Trust was transferred to a nonMERS member was raised for the first time in response to Defendants' Motion to Dismiss.

to Dismiss, the court conducted two hearings regarding Plaintiffs' requests for a temporary restraining order ("TRO"). The court denied Plaintiffs' requests for a TRO on August 22, 2012, and September 5, 2012, after determining that they could not meet all of the requirements for injunctive relief and had an adequate remedy available to them under the Texas Rules of Civil Procedure as to the eviction proceeding pending at that time in the Justice Court in Grand Prairie, Texas.

On November 2, 2012, forty-five days after Defendants filed their reply brief in support of the Motion to Dismiss, Plaintiffs each filed affidavits to which an assignment of Plaintiffs' mortgage from MERS to Fannie Mae and other documents were attached. The evidence was not accompanied by a motion or anything indicating Plaintiffs' reasons for filing the evidence. No objections to the affidavits or documents were asserted by Defendants; however, for the reasons herein explained, the court does not consider Plaintiffs' November 2, 2012 submission in deciding the Motion to Dismiss.

## II.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the

plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III. Analysis

### A. Declaratory Judgment

Plaintiffs' declaratory judgment action is based on their contention that Defendants were not entitled to foreclose on the Property because Defendants do not own a valid and enforceable interest in the Property. For support, Plaintiffs rely on a number of legal theories that the court addresses separately in conjunction with Defendants' contentions. Before addressing Plaintiffs' theories, the court addresses Defendants' contention that: (1) Plaintiffs are attempting to shift the burden of proof on their claims to Defendants; and (2) Plaintiffs' claims based on transfers of the Note and Deed of Trust fail as a matter of law because borrowers lack standing to contest the assignments of a note or deed of trust to which they are not parties or beneficiaries.

### 1.      Burden of Proof and Plaintiffs' Standing to Challenge Assignments

Defendants contend that Plaintiffs, not Defendants, have the burden with regard to their declaratory judgment action and other foreclosure claims to prove "that Defendants are not entitled to foreclose," and that Plaintiffs have failed to assert any facts to support Defendants' alleged lack of authority to foreclose on the Property. Defs.' Br. 6. Defendants therefore argue that Plaintiffs are attempting to circumvent established Texas foreclosure procedure by insisting that Defendants must prove that "they are the proper assignees of the Note and Deed of Trust, and to prove they have authority to foreclose." *Id.* Defendants contend that the allegations in Plaintiffs' Complaint amount only to speculation that "the assignments and/or transfers of the Deed of Trust from MERS through Fannie Mae were improper and that Defendants had no authority to foreclose."[4] *Id.* 4.

According to Defendants, "Plaintiffs primarily assert that they 'never signed a Note in favor of MERS,' that MERS lacks authority to act as a beneficiary under the Deed of Trust, and that the Note and Deed of Trust were split." *Id.* Defendants contend that "Plaintiffs' speculation and complete lack of any cognizable facts to support their claims, all of which are based on their objection to MERS and the assignments of the Deed of Trust, are insufficient to support a claim against Defendants." *Id.*  For support that Plaintiffs cannot use their declaratory judgment action or other claims to shift the burden in this regard, Defendants cite *In re Rollings*, 451 F. App'x 340 (5th Cir. 2011) (unpublished). Defendants also rely on *Val-Com Acquisitions Trust v. Chase Home Finance, LLC*, 420 F. App'x 405 (5th Cir. 2011) (unpublished) (per curiam), and *Misczak v. Chase Home Finance, Limited Liability Company*, 444 F. App'x 35 (5th Cir. 2011) (per curiam)

---

[4] As previously noted, Plaintiffs allege that the REMIC made the assignment to Fannie Mae, not MERS, and Plaintiffs allege that the assignment passed through MERS rather than Fannie Mae.

(unpublished), for the proposition that a plaintiff borrower cannot shift the burden of proof by alleging, without any specific factual allegations, that the defendant lender cannot prove its authority to foreclose.

In addition, Defendants contend that Plaintiffs lack standing to contest the assignments of the Deed of Trust. Defendants maintain that "[m]ortgage borrowers have no standing to contest the assignments from lender to lender because the borrower is not a party to those agreements," and because "[t]hose agreements are for the benefit of the assignor and assignee; the borrower's rights are not affected by them and they accordingly lack standing to complain about them."[5] Defs.' Br. 5 (citing *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010); *Eskridge v. Federal Home Loan Mortg. Corp.*, No. 6:10-CV-285, 2011 WL 2163989, at *5 (W.D. Tex., Feb. 24, 2011); and *McAllister v. BAC Home Loans Servicing, LP*, No. 4:10-CV-504, 2011 WL 2200672, at *5-6 (E.D. Tex., Apr. 28, 2011)). Defendants contend that this same reasoning applies "when a note is assigned in a pooling and servicing agreement, as Plaintiff alleges here." Defs.' Br. 5 (citing *Bittinger*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010), for the proposition that a mortgagor lacks standing to complain regarding a defendant's alleged noncompliance with the terms of pooling and servicing agreement).

To establish standing, Defendants contend that Plaintiffs must assert their own legal rights and interests and cannot rely on the legal rights of Defendants. Because Plaintiffs are not a party to the assignment of the Note by CTX to Fannie Mae, Defendants argue that they have no legal rights

---

[5] Defendants standing argument appears to be a merits-based ground for dismissal under Rule 12(b)(6) for failure to state a claim, as opposed to an allegation that Plaintiffs lack constitutional standing under Rule 12(b)(1) or prudential standing under Rule 12(b)(6).

or interest in such assignment and thus no standing to contest the assignment. Defendants further

contend that under Texas law, book entry systems such as MERS "may properly act as the beneficial

holder of a deed of trust and when a note gets transferred from one mortgagee to another, the interest

in the subject deed of trust goes along with it." Defs.' Br. 9. Defendants contend that in this case:

> The Deed of Trust signed by Plaintiffs established MERS as holding the interest in
> the applicable lien as the nominee for the current and any subsequent noteholders.
> MERS, thus, possessed the authority, as nominee on behalf of the holder of the note,
> to hold the interest in the subject security instrument.

*Id*. Defendants therefore contend that "Plaintiffs' rambling contentions regarding MERS" and

MERS's alleged lack of authority to transfer the Note are without merit. *Id*. Plaintiffs counter that

they have standing with regard to their Texas declaratory judgment action[6] under Texas law because

there exists a present and justiciable controversy between the parties as to whether Fannie Mae or

another entity holds the debt at issue. Plaintiffs contend that because mortgage notes are routinely

sold, "it cannot be presumed that the payee of the original note in this case still owns and holds the

note." Pls.' Resp. 8. Based on *Mortgage Electronic Registration Systems v. Young*, No.

2-08-088-CV, 2009 WL 1564994 (Tex. App.   Ft. Worth 2009, no pet.), Plaintiffs further assert that

because the initial assignment by MERS under the Deed of Trust was to a nonMERS member,

MERS lost any authority it had to subsequently assign the Note and Deed of Trust. *Id*. 6.

### a.    Burden of Proof

Defendants misconstrue the parties' respective burdens with regard to Plaintiffs' declaratory

judgment and other foreclosure claims. The court *In re Rollings* did conclude that the plaintiff bore

---

[6] "When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Garrett v. HSBC Bank USA, N.A.*, No. 3:12-CV-0012-D, 2012 WL 1658796, at *2 n.2 (N.D. Tex. May 11, 2012) (quotation omitted).

the burden of proof on its declaratory judgment action, but *In re Rollings* involved an appeal after a bench trial, not a Rule 12(b)(6) motion to dismiss. *In re Rollings*, 451 F. App'x at 345-56.

Whether Plaintiffs have the ultimate burden of proof at trial on any of their claims is irrelevant here because, for purposes of Defendants' Rule 12(b)(6) motion, Plaintiffs have no burden of proof. Rather, the issue is whether Plaintiffs, based on their pleadings, have stated a claim upon which relief can be granted. While *Val-Com Acquisitions Trust* and *Misczak* involved Rule 12(b)(6) motions, the issue in these cases was not the parties' burdens of proof but instead whether they had stated sufficient facts to state a claim to satisfy the actual case and controversy requirement for a federal declaratory judgment action. *Val-Com Acquisitions Trust*, 420 F. App'x at 406; *Misczak*, 444 F. App'x at 36.

### b.      Standing

Moreover, *Val-Com Acquisitions Trust* and *Misczak* undermine Defendants' contention that Plaintiffs' claims challenging the foreclosure based on the assignments of the Note and Deed of Trust are *per se* barred for lack standing. *Misczak* stated with regard to the plaintiffs' declaratory judgment action:

> Appellants seek declaratory relief concerning Appellee's ownership, possession, and entitlement to enforce the Note. ***However, they have alleged no facts that call into question Appellee's status as assignee, current holder, or servicer of the Note***. Consequently, we agree with the district court that the appellants have failed to allege an actual, present controversy.

*Misczak*, 444 F. App'x at 36 (footnote omitted and emphasis added). The court in *Val-Com Acquisitions Trust* similarly reasoned:

> The only matter briefed before this court is the propriety of the dismissal of Appellants' claims for declaratory relief regarding Chase's status relative to the property in question. In their amended complaint, Appellants stated: "Defendant

Chase claims to be the holder of the Note, and the person entitled to enforce the Note. . . . Defendant Chase claims to be the holder of the Deed of Trust, and the person entitled to enforce the Deed of Trust [and] . . . claims to be the current mortgage servicer of the Note." ***They allege no facts whatsoever casting doubt on Chase's status as assignee of the relevant documents.*** They simply asked for "a determination and declaration of whether Defendant Chase is the owner and/or holder of the Note and Deed of Trust" and similar declarations regarding whether Chase is the mortgage servicer and entitled to enforce and bring a foreclosure action on the relevant documents.

A federal declaratory judgment action requires an actual case or controversy, not a mere hypothetical issue. "Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial'. . ." The district court concluded that Appellants did not allege an actual, current case or controversy on these points, and we agree. ***While there could be a dispute between the parties here, absent an allegation—even on information and belief—that Chase is not who it says it is, there is nothing for the district court to adjudicate***. Accordingly, the district court properly dismissed this case.

*Val-Com Acquisitions Trust*, 420 F. App'x at 406-07 (emphasis added and citations and footnote omitted). The court went on to note that *Lozano v. Ocwen Federal Bank*, 489 F.3d 636, 639 (5th Cir. 2007), cited by the plaintiffs, was inapposite because:

That case involved a declaratory judgment to set aside a foreclosure deed that the plaintiffs contended was entered improperly because they had previously paid the note. Here, the portions of the complaint on which the appeal is based do no more than ask whether Chase is the proper party to pursue foreclosure, etc.; they fail to allege any facts in controversy.

*Id*. at 407 n.1 (internal citation omitted). Although the Fifth Circuit in these cases ultimately determined that dismissal of the plaintiffs' declaratory judgment actions was proper, it did so because the plaintiffs had failed to allege sufficient facts to satisfy the actual case and controversy requirement, not because the plaintiffs lacked standing to challenge the foreclosures based on the defendants' assignments. Moreover, the above highlighted language from these cases leads the court to believe that had the plaintiffs alleged sufficient facts casting doubt on the defendants' status as

assignees, current holders, or servicers of the notes, there would have been a valid dispute between the parties that would have precluded dismissal of the plaintiffs' declaratory judgment claims.

The court's conclusion in this regard is not changed by the federal district court opinions in *Bittinger*, *McAllister*, or *Eskridge*, the cases relied on by Defendants to support their assertion that Plaintiffs' lack standing to contest any assignments. These cases and many other district courts in this circuit have held that borrowers lack standing to challenge the assignments of their mortgages because they are not parties to those assignments. Of these cases, *Eskridge v. Federal Home Loan Mortg. Corporation* was one of the first cases to hold that a plaintiff borrower lacks standing to contest an assignment of a deed of trust and has since been frequently cited by district courts in Texas for the same proposition.

In *Eskridge*, the plaintiff brought a declaratory judgment action and other claims, alleging that the defendants had wrongfully foreclosed on her property. The plaintiff contended that she had superior title "because the Note and Deed of Trust were 'split,' as MERS had no authority under the Note to transfer either the Note and/or the Deed of Trust. As a result, any transfer of the Note to BAC was void." *Eskridge*, 2011 WL 2163989, at *5. The defendants moved to dismiss the plaintiff's claims, and, in ruling on the plaintiff's quiet title and trespass to try title claims, the court concluded without explanation: "Plaintiff has no standing to contest the various assignments as she was not a party to the assignments." *Id.* Based on the documents before the court, which included the note, deed of trust, and assignments, the court went on to note that "[e]ven if she has standing, her allegations are without merit because MERS was given the authority to transfer the documents in the Deed of Trust." *Id.*

**Memorandum Opinion and Order - Page 12**

Like *Eskridge*, many of the cases that have held that borrowers lack standing to challenge the assignments of their mortgages also concluded that even if the plaintiffs had standing, dismissal of their claims was still appropriate because the assignments established the defendants' authority as mortgagees or mortgage servicers to foreclose. *Garrett v. HSBC Bank USA, N.A.*, No. 3:12-CV-0012-D, 2012 WL 1658796, at *5 (N.D. Tex. May 11, 2012) (collecting cases that have examined whether the note or deed of trust permitted the assignment and foreclosure). In ruling on Defendants' motion, the court considers only whether Plaintiffs lack standing to assert their claims.

The court does not consider whether the Defendants had authority as mortgagees or mortgage servicers to foreclose on the Property based on the alleged assignments because copies of the alleged assignments were not attached to the Complaint or Defendants' Motion to Dismiss, and little information regarding the assignments is contained in the Complaint. Although the court suggested during the August 22, 2012 TRO hearing that Defendants supplement their Motion to Dismiss with copies of the assignment(s), *which are referenced in the Complaint and central to Plaintiffs' claims*, Defendants declined to do so in light of their belief that they are entitled to dismissal of Plaintiffs' claims as a matter of law based on their contention that Plaintiffs' lack standing to contest the assignments.

The *Eskridge* court did not cite any authority for its conclusion that the plaintiff lacked "standing to contest the various assignments as she was not a party to the assignments." *Eskridge*, 2011 WL 2163989, at *5.  The court, after searching, has not found any Texas or Fifth Circuit case that has held that a borrow can **never** challenge a foreclosure based on an assignment of a deed of trust because of a lack of standing. The *Eskridge* court's holding in this regard appears to be based on the well-settled rule under Texas law that only actual parties to a contract or intended third-party

beneficiaries can sue for breach of the contract to enforce its terms and claim the benefit of the contract. *See Resolution Trust Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992) (citing *Old Stone Bank v. Fidelity Bank*, 749 F. Supp. 147, 152 (N.D. Tex. 1990) (collecting Texas cases)).

Application of this rule makes sense when a plaintiff asserts a claim for breach of an assignment to which it is not a party or beneficiary, or when a plaintiff is not suing for breach of an assignment but nevertheless asserts other claims that are premised on an alleged breach or failure to comply with the terms of an assignment or securitization pooling and servicing agreement. *See, e.g., Metcalf v. Deutsche Bank Nat'l Trust Co.*, No. 3:11-CV-3014-D, 2012 WL 2399369, at *4 (N.D. Tex. June 26, 2012) ("Plaintiffs lack standing *to challenge this alleged lack of compliance with the PSA* because they have not pleaded facts that allow the court to draw the reasonable inference that they are in privity with or are third-party beneficiaries of the PSA.") (emphasis added); *Schrader-Scalf v. CitiMortgage, Inc.*, No. 3:12-CV-4446-D, 2013 WL 625745, at *5 (N.D. Tex. Feb. 20, 2013) ("Schrader[-]Scalf lacks standing to contest compliance with the terms of an assignment agreement to which she is not a party. Schrader-Scalf lacks standing *to assert this breach of contract claim* because she fails to allege facts that allow the court to draw the reasonable inference that she is privy to the agreement or a third-party beneficiary.") (emphasis added and internal citation omitted). Outside of this context, however, application of the rule is not supported by Texas law. Thus, the court respectfully disagrees with those courts that have concluded that this rule is a *per se* bar to all claims by a plaintiff borrower that pertain to an assignment of a mortgage, including claims that are not premised on an alleged breach or failure to comply with the terms of an assignment of securitization agreement.

**Memorandum Opinion and Order - Page 14**

The court believes that the better approach is that followed in *Metcalf v. Deutsche Bank National Trust Company* and *Miller v. Homecomings Financial, Limited Liability Company*, 4:11-CV-04416, 881 F. Supp. 2d 825 (N.D. Tex. Aug. 08, 2012). *Metcalf* acknowledged that "[c]ourts in this circuit have repeatedly held that borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments." *Metcalf*, 2012 WL 2399369, at *5 (citing *Eskridge*, 2011 WL 2163989, at *5 and other cases). Rather than concluding the plaintiffs' claims were *per se* barred, however, the court examined the bases for the claims and concluded that they had standing to assert some but not all of their claims. *Metcalf*, 2012 WL 2399369, at *4-5. The *Metcalf* court determined that the plaintiffs lacked standing to assert claims based on the defendants' alleged lack of compliance with the Pooling and Service Agreement that governed the asset backed trust, but had standing "to challenge defendants' authority to foreclose on the ground that foreclosure did not comply with the terms of the deed of trust." *Id.* The *Metcalf* court reasoned that "[s]uch a challenge does not contest assignment agreements to which plaintiffs were not parties, in privity, or third party beneficiaries." *Id.* at *5. "[I]nstead, it relies on the terms of the deed of trust that plaintiffs executed in favor of First Franklin. Defendants derive their authority to foreclose from the power of sale in the deed of trust." *Id.*

In *Miller*, the court similarly concluded that a plaintiff borrower is not necessarily precluded in all instances from challenging a foreclosure. In so holding, the court declined to follow Eskridge and the several other recent district court cases cited by the defendants, reasoning that "none of these decisions cite[s] any Texas case law or statute, and all but one explicitly rely upon a single federal case, *Eskridge v. Fed. Home Loan Mortgage Corp*., 2011 WL 2163989, at * 5 ( W.D. Tex. Feb. 24, 2011), which cites no authority at all, state or federal." *Miller*, 881 F. Supp. 2d at 831-32. The court

**Memorandum Opinion and Order - Page 15**

went on to note that "Texas has long followed the common law rule [that] permits a debtor to assert against an assignee any ground that renders the assignment void or invalid," and that "Texas courts routinely allow a homeowner to challenge the chain of assignments by which a party claims the right to foreclose." *Id.* (collecting Texas cases and federal district cases applying Texas law). The *Miller* court therefore concluded:

> The court concludes that under Texas law homeowners have legal standing to challenge the validity or effectiveness of any assignment or chain of assignments under which a party claims the right to foreclose on their property. Accordingly, plaintiffs have properly stated claims for declaratory and injunctive relief based on wrongful foreclosure, trespass to try title and quiet title.

*Id*. at 832.

Applying the reasoning in *Miller* and *Metcalf*, the court concludes that none of Plaintiffs' claims in this case is barred for lack of standing as a result of their nonparty and nonbeneficiary status in the alleged assignments and securitization agreement because Plaintiffs do not contend that Defendants breached or failed to comply with the terms of the alleged assignments or securitization agreement, and they do not seek any benefit under the assignments or securitization agreement. Instead, Plaintiffs challenge Defendants' authority under the Note and Deed of Trust to make assignments and foreclose on the Property. Plaintiffs' claims therefore derive from the Note and Deed of Trust to which they are parties, not the alleged assignments or securitization agreement. Having determined that Plaintiffs' have standing, the court next considers whether Plaintiffs have alleged plausible claims for purposes of Rule 12(b)(6). Despite the court's conclusion that Plaintiffs have standing, the court determines for the reasons discussed herein that certain of Plaintiffs' claim fail for other reasons.

## 2.    Sufficiency of Plaintiffs' Allegations

With regard to their declaratory judgment action, Plaintiffs' Complaint states:

> Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiffs request[] that the Court find, that the Deed of Trust, and provisions therein relating to enforcement of the Note through foreclosure, had become null and void and that the foreclosure sale is thereby unenforceable, null and void. Plaintiffs further request that the Court find that a bifurcation of/between the Deed of Trust and Note occurred, rendering unenforceable any interest in the Property which Defendants seek to foreclose.

Pls.' Compl. 33. Plaintiffs also seek a declaratory judgment stating that "Defendants have violated Plaintiff's rights and . . . have no right to hold mortgages in the name of Fannie Mae and/or foreclose on the property and none of the Defendants are entitled to further payments from the Plaintiffs or recognition in Title to his property." *Id.* 29, ¶ 33. Plaintiffs' request for a determination that the foreclosure and any interests held by Defendants' in the Property are void is insufficient alone to state an actual, present controversy because it is not supported by any facts casting doubt on the propriety of the foreclosure or Defendants' status as assignees. *Misczak*, 444 F. App'x at 36; *Val-Com Acquisitions Trust*, 420 F. App'x at 406-07. Plaintiffs rely on a number of legal theories and arguments in support of their wrongful foreclosure claim and declaratory judgment action in an attempt to cast doubt on the propriety of the foreclosure and Defendants' status as assignees. For the reasons that follow, however, some of these arguments either fail as a matter of law or they are not supported by sufficient factual allegations.

### a.    Failure to Record Assignments

Plaintiffs allege in their Complaint that the "purported" assignments of their mortgage are invalid, and Defendants lacked authority to foreclose because the assignments were not recorded. Defendants contend that, under Texas law, they had no obligation to record any of the assignments,

and the ability to foreclose on a deed of trust is transferred when the note is transferred. Plaintiffs respond that there are no known recordings of any assignments of the Note to Fannie Mae (which presumably foreclosed on the Property), and Fannie Mae has not offered any proof that it owns the Note. Plaintiffs therefore continue to maintain that Fannie Mae or Defendants did not have authority to foreclose on the Property.

Plaintiffs' contention in this regard is without merit. Under Texas law, "the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded." *Bittinger*, 744 F. Supp. 2d at 625 (citing *JWD, Inc. v. Federal Ins. Co.*, 806 S.W.2d 327, 329-30 (Tex. App.  Austin 1991, no writ)). Consequently, "'Texas courts have consistently held that recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments.'" *Cervantes v. U.S. Bank Nat'l, Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (quoting *Broyles v. Chase Home Finance*, No. 3:10-CV-2256-G, 2011 WL 1428904, at *2 (N.D. Tex. Apr. 13, 2011)). That recordation is not required is supported by Section 13.001 of the Property Code, which makes clear that an "unrecorded instrument is binding on a party to the instrument." *Id.* (quoting Tex. Prop. Code Ann. § 13.001(b) (Vernon 2003)). Accordingly, any alleged failure by Defendants to record assignments of the Note does not give rise to a claim based on wrongful foreclosure, regardless of whether the claim is packaged as a declaratory judgment action or otherwise. Plaintiffs have therefore failed to state a claim upon which relief can be granted and are not entitled to a declaratory judgment on this ground. The court will therefore grant Defendants' Motion to Dismiss Plaintiffs' declaratory judgment action insofar as it is based on failure to record assignments; however, as

explained herein, Plaintiffs have alleged alternate theories in support of their declaratory judgment action that are not disposed of by Defendants' Motion to Dismiss.

### b.    Bifurcation and "Show-Me-the-Note" Theories

Plaintiffs contend in their Complaint that Defendants have no rights, ownership, or claim to the Property, and any attempted foreclosure by Defendants was illegal and procured by fraud because: (1) Defendants, including MERS, lack authority to transfer or assign the Note; (2) the transfer and securitization of the Note resulted in the Note being separated from the Deed of Trust and, even if MERS had authority to initially transfer the Note, any such authority was lost when Note was securitized; and (3) Defendants did not have authority to foreclose because they are not owners or holders of the Note and have refused to respond to Plaintiffs' requests to identify the real party of interest on the Note by producing the "original wet ink signature Promissory Note," which according to Plaintiffs, "is the only valid and legally binding chain of title for the Note" under the Uniform Commercial Code. Pls.' Compl. 12.

Defendants contend that Plaintiffs' claims in this regard are based on "show-me-the-note" and "split-the-note" theories that are contrary to Texas law. Defendants contend that Texas law does not require a mortgagee or servicer to be the owner or holder of a note in order to foreclose, and the ability to foreclose on a deed of trust is transferred when the note is transferred because a mortgage on real estate follows the promissory note it secures. Defendants further assert that Texas law has expressly approved the use of book entry systems such as MERS to act as the beneficial holder of a deed of trust, and, when the note is transferred from one mortgagee to another, the interest in the deed of trust goes along with it. Defendants contend that in this case, the Deed of Trust signed by

**Memorandum Opinion and Order - Page 19**

Plaintiffs established MERS as holding the interest in the lien as the nominee for the current and any

subsequent note holders, and that MERS thus possessed the authority as nominee on behalf of the

holder of the Note to hold the interest in the security instrument.

In their Complaint and in response to Defendants' motion, Plaintiffs argue that the alleged

securitization of the Note caused it to be converted to a mortgage backed security "thereby changing

the nature of the note from a Negotiable Instrument/Promissory Note governed by the UCC, to a

Stock or Bond governed by the SEC." Pls.' Compl. 6-7, ¶ 12. Plaintiffs contend, based on *Bellistri*

*v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. Ct. App. 2009), and other cases, that it is well

settled that foreclosure cannot take place if the note and deed of trust become separated and the entity

seeking to foreclose does not hold both. Plaintiffs assert that Fannie Mae is not the holder or owner

of the Note and has never offered proof that it holds the beneficial interest in the Note, and, without

such proof, it could not enforce the Note. Pls.' Resp. 10, 14. Plaintiffs further assert that Defendants

misinterpret their argument "in that the controversy is not over the existence of separate rights

provided for the note, governed by the Texas Uniform Commercial Code, which excludes governing

the enforcement of a deed of trust securing that same note if, as here, the deed of trust creates a lien

against real property." *Id*. at 12. For support, Plaintiffs rely on *Carpenter v. Longan*, 83 U.S. 271

(1872), for the proposition: "Where negotiable note is secured by mortgage, the note and mortgage

are inseparable, and the assignment of the note carries the mortgage with it, while an assignment of

the mortgage alone is a nullity."[7] Pls.' Resp. 12-13.

Boiled down to its essence, Plaintiffs' contention is that Defendants, and in particular Fannie

Mae, were required to hold, possess, and produce the original Note upon Plaintiffs' request before

---

[7] This quote is actually to the Westlaw headnotes of the *Carpenter* opinion.

foreclosing on the Property, and Defendants cannot produce the Note because it was split or separated from the Deed of Trust when Plaintiffs' mortgage was securitized. The court agrees with Defendants that Plaintiffs' contention in this regard is akin to the so-called "show-me-the-note" and "split-the-note" theories that have been rejected by courts in this circuit applying Texas law. Moreover, Plaintiffs appear to conflate the enforcement of a promissory note and foreclosure, which are not synonymous under Texas law. *See Puig v. Citibank, NA*, No. 3:11-CV-0270-L, 2012 WL 1835721, at *5 (N.D. Tex. May 21, 2012) (explaining that Texas law differentiates between the two: "Foreclosure enforces the deed of trust, not the underlying note and is an independent action against the collateral and may be conducted without judicial supervision. In contrast, enforcement of the note is a personal action and requires a judicial proceeding.") (quotation omitted), *aff'd*, 2013 WL 657676 (5th Cir. Feb. 22, 2013).

### i.        "Show-Me-the-Note" Theory

Under the "show-me-the-note" theory, "only the holder of the original wet-ink signature note has the lawful power to initiate a nonjudicial foreclosure." *Id.* (quoting *Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at* 2 (W.D. Tex. Apr. 26, 2011)). Production of the original note, however, is not necessary to foreclose pursuant to a deed of trust in Texas. *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n.1 (5th Cir. Mar. 28, 2011) (unpublished, per curiam) (citing Tex. Prop. Code Ann. §§ 51.002 & 51.0025 (West 2007)). Rather, the Texas Property Code permits either a mortgage servicer or mortgagee to administer a deed of trust or contract lien foreclosure without production of the original note. *Id.* Section 51.0025 of the Texas Property Code permits a mortgage servicer to "administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if . . . the mortgage servicer

and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage" and the required notice under Section 51.002(b) is given. Section 51.0001 of the Texas Property Code defines "mortgagee" as "the grantee, beneficiary, owner, or holder of a security instrument," "a book entry system," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code § 51.0001(4)(A)-(C).

Accordingly, under the Texas Property Code, it is contemplated that the entity administering the foreclosure may not necessarily be the owner or holder of the security instrument. *Id*. Consequently, Defendants were not required, as a prerequisite to foreclosure, to produce the original Note to Plaintiffs; nor were they required to be the holder or owner of the security instrument if the Defendant that administered the foreclosure qualifies as a mortgage servicer or mortgagee. Based on Plaintiffs' pleadings alone, the court cannot ascertain which Defendant administered the foreclosure or whether the foreclosing Defendant qualifies as a mortgage servicer or mortgagee under the Texas Property Code. Moreover, Defendants' contention regarding MERS's authority under Texas law and the Deed or Trust does not address Plaintiffs' allegation that the REMIC, not MERS, assigned Plaintiffs' mortgage to Fannie Mae. Defendants also do not address the contention raised in Plaintiffs' responsive brief that even if MERS had authority initially under the Deed of Trust to make assignments and foreclose, it lost any such authority when Plaintiffs' mortgage was transferred to a nonMERS member. Thus, Plaintiffs are not entitled to a declaratory judgment on the ground that Defendants failed to produce an original wet-ink signature Note before foreclosing, but the court determines that dismissal of Plaintiffs' declaratory judgment action or other claims that are

predicated on their contention that Defendants lacked authority to assign the mortgage and foreclose on the Property is premature and would be more appropriately addressed in the context of a motion for summary judgment.

Although Plaintiffs' November 2, 2012 submission, includes a document in which MERS appears to have transferred the Deed of Trust to Fannie Mae in April 2011, the court does not consider it in ruling on Defendants' motion because it and the other documents were not attached to Plaintiffs' Complaint or Defendants' motion. *See Collins*, 224 F.3d at 498-99; *Spivey*, 197 F.3d at 774; *Bisor v. Solis*, No. 3:10-CV-1115-L, 2010 WL 3582536, at *2 (N.D. Tex. Sept. 10, 2010) ("The court agrees with Defendants that the evidence submitted by Plaintiff with her response is not part of the pleadings and cannot be considered by the court pursuant to Rule 12( b)( 6) of the Federal Rules of Civil Procedure, as they were not attached to or referred to in Plaintiff's Complaint, or attached to Defendants' Motion to Dismiss."). Moreover, it is not entirely clear whether Plaintiffs submitted the assignment and other documents in support of their response to Defendants' motion, as these documents were filed without leave of court long after Defendants filed their reply brief. While the court could consider this evidence if it converted Defendants' motion to a motion for summary judgment, it declines, in part, to do so because the proffered material would not likely result in the disposition of the entire action. *Fernandez  Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993); *Isquith v. Middle South Util., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

ii.     "Split-the-Note" Theory

The "split-the-note" theory and *Bellistri* are frequently relied on by plaintiffs in mortgage

foreclosure cases. According to advocates of the "split-the-note theory," an assignee of a deed of

trust lacks power to foreclose when the deed of trust is assigned without the note. *Schrader-Scalf v.*

*CitiMortgage, Inc.*, No. 3:12-CV-4446-D, 2013 WL 625745, at *2 n.3 (N.D. Tex. Feb. 20, 2013).

The theory, however, has enjoyed only a modicum of acceptance, and the reasoning in *Bellistri* has

not been embraced by Texas state courts and federal courts that have addressed the issue and

interpreted Texas law. *See Wigginton v. Bank of N.Y. Mellon*, 488 F. App'x 868, 870 (5th Cir. 2012)

(per curiam); *Casterline v. OneWest Bank, F.S.B.*, No. CA C-12-150, 2012 WL 5465982, at *7 (S.D.

Tex. Oct. 10, 2012) (collecting cases). This is because Texas follows the rule that a mortgage on real

estate follows the promissory note it secures. *JWD, Inc.*, 806 S.W.2d at 329-30 (collecting cases).

In addition, as already explained, the entity administering the foreclosure does not necessarily have

to be the owner or holder of the security instrument because the Texas Property Code contemplates

that someone other than the holder of the original note may lawfully foreclose

on the security interest.

Plaintiffs' reliance on *Carpenter* fairs no better. Like *Bellistri* and the other cases cited by

Plaintiffs, the court in *Carpenter* did not apply Texas property law as it stands today. Rather,

*Carpenter*, which is an 1892 Supreme Court case, appears to have been based on Colorado territorial

or federal common law at that time. *See Carpenter*, 83 U.S. at 271-76. As discussed above,

promissory notes and deeds of trust are viewed and treated as distinct obligations under modern

Texas law. Moreover, it is not within the United States Supreme Court's power to construe or narrow

otherwise constitutional Texas laws. *See Kramer v. Federal Nat'l Mortg. Ass'n*, No.

**Memorandum Opinion and Order - Page 24**

A-12-CA-276-SS, 2012 WL 3027990, *7 (W.D. Tex. May 15, 2012) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("[I]t is not within our power to construe and narrow state laws.")). Accordingly, the court's holding in *Carpenter* is not controlling.

Moreover, Plaintiffs cite no Texas authority, and the court has found none, to support their contention that the mere securitization of a note by transferring it into a trust extinguishes the foreclosure rights of the assignee of the deed of trust. This contention also appears to rely on the flawed "split-the-note" theory because it assumes that, under Texas law, the entity foreclosing must own or hold both the note and the deed of trust. Plaintiffs also fail to allege any facts, which if proved, would establish that the alleged securitization and transfer of the Note to a trust in this case affected Defendants' alleged status as assignees or MERS's authority as beneficiary of the security instrument and nominee for the lender and the lender's successor's and assigns with power to foreclose and sell the Property.[8] Plaintiffs' declaratory judgment action, based on the "split-the-note" theory, therefore fails as a matter of law.  The court will therefore grant Defendants' Motion to Dismiss Plaintiffs' declaratory judgment action insofar as it is based on a "split-the-note" theory; however, as already discussed, this does not dispose of Plaintiffs' declaratory judgment action in its entirety because Plaintiffs have alleged alternate theories in support of their declaratory judgment action that are not addressed in Defendants' Motion to Dismiss.

---

[8] The Deed of Trust defines "Successor in Interest of Borrower" as "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument." Pls.' Compl., Exh. A, ¶ R. The Note similarly provides that the "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder,'" and Plaintiffs acknowledged that they "understand that the Lender may transfer this Note." *Id.* Exh. B, 1. With regard to MERS authority, the Deed of Trust states that MERS is the "beneficiary" of the security instrument "(solely as nominee for Lender and Lender's sucessors and assigns) and the successor and assigns of MERS," and in this capacity "has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." *Id.* Exh. A, ¶¶ E and R.

### c.       Plaintiffs' Other Theories

In addition to the aforementioned theories, Plaintiffs allege in their Complaint that the assignments of the Note and Deed or Trust and foreclosure are unenforceable because: (1) "[a]ll of the purported Assignments and transfers were done . . . without the required corporate resolution giving authority for that person to conduct such assignments and transfers"; and (2) "[a]ny purported transfers of any interest in the real estate was wrongful and invalid because the endorsements, assignments, [and] foreclosure [were] invalid and [were] not conducted in accordance with the laws of the State of Texas." Pls.' Compl. 14, ¶ 13(bb); 28-29, ¶ 32.

Defendants do not address Plaintiffs' allegations in this regard or Plaintiffs' contention that the Note or Deed or Trust were transferred to a nonMERS member. The court nevertheless determines that Plaintiffs' allegations in this regard are wholly conclusory and appear to be based on nothing more than speculation. Plaintiffs' allegation that the Note or Deed or Trust were transferred to a nonMERS member are likewise deficient. Due to the complete lack of any factual detail in Plaintiffs' pleadings, the court concludes that Plaintiffs have failed to state plausible claims based on these grounds upon which relief can be granted because their pleadings do not allow the court to infer more than the mere possibility of wrongdoing. *Iqbal*, 556 U.S. at 679.

Although it appears from Plaintiffs' response to Defendants' motion and their November 2, 2012 submission that Plaintiffs have knowledge of certain facts pertaining to their claims, their Complaint is noticeably devoid of facts regarding the actual assignments, foreclosure, and the events that preceded the foreclosure. The majority of Plaintiffs' thirty-five-page Complaint contains little or no factual allegations whatsoever and instead includes an abundance of formulaic arguments and quotations from mortgage cases that applied the laws of states other than Texas. Accordingly, to the

extent Plaintiffs rely on the aforementioned allegations to support their declaratory judgment action or other claims, they are insufficient to state a claim upon which relief can be granted. Rather than dismiss Plaintiffs' declaratory judgment action and claims that are based on these grounds, the court will permit Plaintiffs to file an amended complaint to plead facts pertaining to their contention that assignments were made without the requisite corporate resolutions, conducted in contravention Texas law, or made by MERS after the assignment to a nonMERS member.

> **3.    Whether Plaintiffs' Remaining Claims are based on the Same Flawed Theories**

Defendants contend that Plaintiffs' remaining claims should be dismissed because they are based on the same flawed theories as their declaratory judgment action. Specifically, Defendants contend that they are entitled to dismissal of Plaintiffs' remaining claims for alleged violations of the CPRC, FDCPA, and RESPA, unjust enrichment, negligent misrepresentation, fraudulent misrepresentation, slander of title or quiet title, FDCPA violations, RESPA violations, and negligent supervision because "[a]ll of Plaintiffs' remaining claims simply recite the legal elements of the causes of action and are based upon the same speculative allegations." Defs.' Br. 9. Defendants further contend with regard to each of the aforementioned claims that:

> Plaintiffs are making arguments about the allegedly improper assignments based upon unsubstantiated speculation and objection to MERS as a beneficiary under the Deed of Trust. As indicated above, the authority of MERS has been confirmed by the Texas Property Code and case law, and set forth above. Furthermore, Plaintiffs have no standing to complain of the assignments.

*Id.* at 10. Plaintiffs contend with regard to each of their remaining claims that they have stated valid causes of action.

For the reasons already discussed, the court concludes that Plaintiffs have standing to assert these claims and denies Defendants' motion on this ground. Defendants' contention that Plaintiffs claims "simply recite the legal elements of the causes of action" is a valid one, but it is not accompanied by any legal authority or analysis, and Defendants' summarization of Plaintiffs' allegations mischaracterizes Plaintiffs' pleadings by oversimplifying and misstating them.[9] *See* L.R. 7.1(d) ("An opposed motion must be accompanied by a brief that sets forth the moving party's contentions of fact and/or law, and argument and authorities, unless a brief is not required by subsection (h) of this rule."). The court therefore declines to address Defendants' Motion to Dismiss based on insufficient allegations and considers only whether Plaintiffs' claims are based on the recordation, "show-me-the-note," and "split-the-note" theories that the court has determined fail as a matter of law.

### a.      CPRC Claim

In support of their claim under section 12.002 of the Texas CPRC, Plaintiffs allege: "All Defendants presented, or utilized documents or other records in the foreclosure of Plaintiff[s]' property, with knowledge that the documents were fraudulent." Pls.' Compl. 24. In response to Defendants' motion, Plaintiffs contend that their Complaint contains numerous references to their contention that: (1) the Note and Deed or Trust were separated as a result of the securitization; (2) the trust transferred the Note to Fannie Mae but the real party in interest on the Note is unknown because Fannie Mae has not offered any proof that it is the owner of the Note; and (3) Fannie Mae

---

[9] For example, Defendants contend with regard to Plaintiffs' slander and quiet title claim that "Plaintiffs allege that Defendants lacked authority to foreclose and that the assignments of the loan were 'false.'" Defs.' Br. 10. Plaintiffs use the term "false" in connection with their slander and quiet title claim; however, contrary to Defendants' assertion, Plaintiffs do not allege that "the assignments of the loan were 'false.'"

has used false documents and liens against Plaintiffs, including a null and void Deed of Trust and an "unrecorded note/debt unsecured debt instrument with an unknown beneficiary." Pls.' Resp. 13-14.

      For the reasons already discussed, Plaintiffs allegations regarding securitization that are based on the "split-the-note" theory fail as a matter of law. Thus, Plaintiffs' CPRC claim based on the "split-the-note" theory similarly fails.  The court will therefore grant Defendants' Motion to Dismiss Plaintiffs' CPRC claim insofar as it is based on  the "split-the-note" theory; however, Defendants' motion does not dispose of Plaintiffs' CPRC claim in its entirety since Plaintiffs also contend that the foreclosure was illegal because the assignment to Fannie Mae was invalid.

> **b.**      **Unjust Enrichment Claim**

      In support of their unjust enrichment claim, Plaintiffs allege:

> MERSCORP INC., MERS, and CTX Mortgage LLC have been unjustly enriched by their conduct . . . by avoiding recording fees[,] by their receipt of fees charged to MERS members for MERS to track mortgage loan and mortgage transfers which would otherwise have been recorded in the deed records of Dallas County, Texas[,] and selling and securitizing Plaintiff[s]' Note on Wall Street while continuing to perpetrate fraudulent collection practices on the Note when in fact CTX ceased to be, and was never acting on behalf of the Real Parties of Interest on said Note once securitized.

Pls.' Compl. 26, ¶ 26. In response to Defendants' motion, Plaintiffs similarly contend that Defendants were unjustly enriched as a result of the securitization of their mortgage. The court agrees with Defendants that Plaintiffs' unjust enrichment claim is based on the same flawed recordation and "split-the-note" theories. Defendants are therefore entitled to dismissal of Plaintiffs' unjust enrichment claim.

### c.      Fraudulent Misrepresentation Claim

In support of their fraudulent misrepresentation claim, Plaintiffs allege:

> Defendants fraudulently misrepresented the true beneficial owner of Plaintiffs' Note and related mortgage filed by them in Dallas County, Texas for the purpose of perpetrating a fraudulent foreclosure of Plaintiff[s]' property, as the Note has been "offset" as a loss to the Trust (SPV) and no longer exists, while Defendants cannot prove or show the Real Party of Interest on said Note.

Pls.' Compl. 28, ¶ 30. In response to Defendants' motion, Plaintiffs "stand on" their fraudulent misrepresentation claim as pleaded. Pls.' Resp. 21-22 (contending that Fannie Mae is not the holder or owner of the Note and therefore cannot enforce it). While Plaintiffs' fraudulent misrepresentation claim is based in part on Plaintiffs' contention that Note and Deed of Trust were separated as a result of the securitization, it is also based on their contention that the foreclosure was illegal because the assignment to Fannie Mae was invalid. Accordingly, Defendants are not entitled to dismissal of Plaintiffs' fraudulent misrepresentation on this ground. The court nevertheless agrees with Defendants' alternate contention that Plaintiffs' allegations with regard to their fraudulent misrepresentation claim are insufficient to satisfy Rule 9(b)'s heightened pleading standard. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) ("[W]ith respect to the fraud and fraudulent inducement claims, Fed. R. Civ. P. 9(b) requires that Appellant state with particularity the circumstances constituting the fraud. Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.") (internal quotations and citations omitted). The court will nevertheless permit Plaintiffs to file an amended complaint as to this claim that states with particularity the circumstances constituting the alleged fraud and satisfies Rule 9(b).

### d.    Negligent Misrepresentation and Supervision Claims

In support of their negligent misrepresentation and supervision claims, Plaintiffs allege:

Defendants intentionally instituted anunlawful [sic] foreclosure against Plaintiffs based upon fraudulent documents in the Dallas County, Texas Court. The deceptive acts of the Defendants and their employees and agents resulted in a multitude of misrepresentations, including but not limited to the true identity of the Lender, and the fraudulent misrepresentation as to the Mortgagee.

Pls.' Compl. 26-27, ¶ 27. With regard to their negligent supervision claim, Plaintiffs' allege:

44.    Defendants had a duty of care to supervise the actions of their employees and agents.

45.    Defendants['] employees and/or agents['] actions as alleged previously, were unlawful and violated Plaintiff[s]' property rights.

46.    Defendants knew or should have known that their employees and/or agents were acting unlawfully.

47.    As a result of the Defendants' negligent supervision, Plaintiffs [were] proximately injured by the unlawful acts of their employees and/or agents. An agency relationship exists between the individual defendants and the corporate defendants.

*Id*. at 32, ¶¶ 44-47. In response to Defendants' motion, Plaintiffs contend that they relied on Defendants to "properly represent the true holder/owner/beneficiary of the note." Pls.' Resp. 17. Plaintiffs further assert that Defendants had a duty to "accurately disclose all information pertinent to Plaintiff[s]' home loan, including . . . true and correct information regarding the securitization and offset or write-off of their note, the existence of any CDS, SPV, or REMIC, and the fact that the Defendant lender had no legal right [to] foreclose upon their mortgage once the promissory note became the basis for an MBS pool." *Id.* Additionally, Plaintiffs contend that their negligent

misrepresentation and supervision claims are based on their contention that MERS lacked authority to assign the Note or Deed of Trust.

The court concludes that these claims are based in part on the "split-the-note" theory already rejected by the court.  The court will therefore grant Defendants' Motion to Dismiss Plaintiffs' negligent misrepresentation and supervision claims insofar as they are based on the "split-the-note" theory; however, Defendants' motion does not entirely dispose of Plaintiffs' negligent misrepresentation and supervision claims because Plaintiffs also allege that Defendants made misrepresentations regarding the mortgagee, and for the reasons discussed, the court cannot say based on Plaintiffs' pleadings that Defendants, and in particular Fannie Mae, qualified as a mortgagee or mortgage servicer with authority to foreclose on the Property.

### e.    Slander of Title and Quiet Title Claim

Defendants assert: "In support of their claim for slander of title/suit to quiet title, Plaintiffs allege that Defendants lacked authority to foreclose and that the assignments were 'false.'" Defs.' Br. 10. Other than this cryptic statement, Defendants do not explain why they believe Plaintiffs have failed to state a claim upon which relief can be granted for slander and quiet title. Moreover, as previously noted, Plaintiffs do not allege that "the assignments of the loan were 'false.'" Pls.' Resp. 20.

Plaintiffs respond with citations to a number of Texas cases and contend: "Plaintiff[s] allege[] that [they were] the owner[s] of a specific parcel of real estate, that Defendant Fannie Mae asserted an interest in the land by virtue of being the beneficiary under a deed of trust, and that although the deed of trust appeared valid on its face it was in fact unenforceable and therefore void. Accordingly, Plaintiff[s] seek[] relief by way of a suit to quiet title."  Pls.' Resp. 20.

Plaintiffs allege in their Complaint that they signed a promissory note secured by a deed of trust to purchase the Property in 2007, that they are "true owner[s] in fee simple" as a result of their purchasing the Property, and that they have been in possession of the Property at all times. Pls.' Compl. 5, ¶ 10. In addition, Plaintiffs allege that their title to the Property is affected by Defendants' claim and foreclosure on the Property, that Defendants made misrepresentations regarding the identity of the mortgagee and the mortgagee's authority to foreclose, and that Defendants' claim and foreclosure are invalid or unenforceable because the foreclosure was not conducted in accordance with Texas law and the Deed of Trust.  Because Plaintiffs' slander and quiet title claims do not appear to be based on the flawed theories discussed, the court will deny Defendants' Motion to Dismiss Plaintiffs' slander of title and quiet title claims.

### f.      FDCPA

With regard to this claim, Defendants assert, without explanation: "Plaintiffs state that Defendants repeatedly misrepresented that they were the 'lawful holders' of the debt, and that Defendants' actions related to the foreclosure of the loan were unlawful because Defendants did not have authority to foreclose." Defs.' Br. 10. From this, it appears that Defendants contend that Plaintiffs' FDCPA claim should be dismissed because it is based on standing, "show-me-the-note," and "split-the-note" theories.

Defendants' characterization of Plaintiffs' pleadings oversimplifies the basis of Plaintiffs' FDCPA claim. In support of their FDCPA claim, Plaintiffs allege that Defendants misrepresented the character and legal status of the debt and communicated misinformation regarding the debt to third parties after Plaintiffs' disputed the debt. Plaintiffs further allege that Defendants misrepresented numerous times that they were the lawful owners of the debt or had the authority to

speak on behalf of the owner of the debt. Additionally, Plaintiffs allege that Defendants attempted to collect on the debt in a manner not authorized by the Note and Deed of Trust. Pls.' Compl. 30-31 and 33.

The court therefore disagrees that Plaintiffs' allegations in this regard are necessarily based on "show-me-the-note" or "split-the-note" theories, and the court has already determined that Plaintiffs have standing to contest the foreclosure based on the alleged invalidity of the assignment(s). Moreover, as already discussed, the court cannot say based on Plaintiffs' pleadings that Defendants, and in particular Fannie Mae, qualified as a mortgagee or mortgage servicer under the Texas Property Code with authority to foreclose. Accordingly, Defendants are not entitled to dismissal of Plaintiffs' FDCPA claim on the ground that it is based on flawed theories not recognized by Texas law and rejected by the court.

Alternatively, Defendants contend that Plaintiffs' claim for alleged FDCPA violations should be dismissed because Defendants are not debt collectors. Defs.' Br. 14 (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)). Defendants further assert that "[t]he activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA." Defs.' Br. 14. For support that foreclosing on property does not qualify as debt collection, Defendants quote to *Williams v. Countrywide Home Loans, Incorporated*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008)).

Plaintiffs counter that Fannie Mae qualifies as a debt collector. In addition, Plaintiffs contend:

None of the Defendants[,] including Fannie Mae[,] [is] the owner, holder in due course, or real party in interest of Plaintiff[s]' original promissory note . . . however, Fannie May has continuously engaged in collection efforts and instituted [a]

fraudulent foreclosure action against said property. [Defendants] have refused to answer Plaintiff[s]' written requests to determine the true owner/holder in due course on the note. They therefore meet the definition of debt collector under the FDCPA. The note Fannie Mae attempts to collect in this case is as best unsecured, as a result of the securitization.

Pls.' Resp. 23.

According to counts six and nine of the Complaint, Plaintiffs' FDCPA claim is against Defendants CTX, MERS, MERSCORP, and the McCarthy law firm, although Plaintiffs refer generally to "Defendants." Plaintiffs further assert in their pleadings that attorneys who regularly engage in debt collection are debt collectors under the FDCPA. The court therefore considers whether any of the Defendants qualify as debt collectors under the FDCPA. The FDCPA defines "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). The term "debt collector" does not include lenders. See § 1692a(6)(F). Thus, CTX as the original lender does not qualify as a debt collector. Additionally, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned*." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (emphasis added and citations omitted); see also § 1692a(6)(F). As previously noted, however, the assignments at issue in this case are not before the court, and it is

unclear from Plaintiffs' pleadings or the parties' briefing what the status of the debt was at the time of the assignments. Defendants do not specifically address, and the court therefore does not consider, whether the McCarthy law firm qualifies as a debt collector.

The court turns next to Defendants' contention that foreclosure proceedings do not qualify as debt collection under the FDCPA. The FDCPA does not define the term "debt collection," and the court was unable to locate the quoted passage, "[t]he activity of foreclosing on a property pursuant to a deed of trust is not the collection of debt within the meaning of the FDCPA," anywhere in *Williams v. Countrywide Home Loans, Incorporated*, Defs.' Br. 14; nor does *Williams* state that foreclosing on property does not qualify as debt collection under the FDCPA. Defendants' contention that Plaintiffs' FDCPA claim is based solely on foreclosure of the loan also misstates Plaintiffs' pleadings. Plaintiffs' FDCPA claim is based in part on Defendants "assisting in the filing of an unlawful foreclosure"; however, it is also based on Plaintiffs' contention that Defendants communicated false information to third parties regarding the debt after Plaintiffs disputed the debt. Accordingly, the court will grant Defendants' motion insofar as it seeks dismissal of Plaintiffs' FDCPA claim on the ground that CTX is not a debt collector. The court will otherwise deny Defendants' Motion to Dismiss Plaintiffs' FDCPA claim.

### g. RESPA

In support of their RESPA claim, Plaintiffs allege in their Complaint: "Defendants failed to timely inform [them] of any alleged Appointments, Assignments and transfers of the mortgage in violation of RESPA." Pls.' Compl. 32, ¶ 41. Plaintiffs also allege that "Defendants failed to timely notify Plaintiff of any change of servicers," and "Plaintiffs [have] previously made written demands

to Defendants to show evidence of standing to claim a debt [, but] Defendants have refused to evidence such standing." *Id.* ¶¶ 42-43. Because Plaintiffs' RESPA claim does not appear to be based on the flawed theories discussed and raises issues regarding Defendants' alleged failure to notify Plaintiffs of a change in servicers, the court will deny Defendants' Motion to Dismiss Plaintiffs' RESPA claim.

**B.   Whether the Economic Loss Rule Bars Plaintiffs' Negligent Misrepresentation and Supervision Claims**

Defendants argue in the alternative that Plaintiffs' tort claims for unjust enrichment, negligent misrepresentation, and negligent supervision are barred by the economic loss rule because Plaintiffs' claims in this regard pertain to Defendants' alleged contractual obligations under the Note and Deed of Trust. The court has already determined that Defendants are entitled to dismissal of Plaintiffs' unjust enrichment claim. The court addresses only whether Plaintiffs' claims for negligent misrepresentation and supervision are barred by the economic loss rule.

Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). Thus, tort damages are generally not recoverable if the defendants' conduct "would give rise to liability only because it breaches the parties' agreement." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Tort damages are recoverable, however, if the defendants' conduct "would give rise to liability independent of the fact that a contract exists between the parties." *Id.* In *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986), a negligent supervision case, the Texas Supreme Court explained: "The nature of the injury most often determines which duty or duties are breached. When

the injury is only the economic loss to the subject of a contract itself, the action sounds in contract

alone." *Id*. at 618; *DeLanney*, 809 S.W.2d at 494 ("When the only loss or damage is to the subject

of the contract, the plaintiff's action is ordinarily on the contract."). The Texas Supreme Court,

however, has declined to extend the economic loss doctrine to a fraudulent inducement claim.

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011).

> With regard to their negligent misrepresentation claim, Plaintiffs' Complaint states:

> Defendants intentionally instituted anunlawful [sic] foreclosure against Plaintiffs based upon fraudulent documents in the Dallas County, Texas Court. The deceptive acts of the Defendants and their employees and agents resulted in a multitude of misrepresentations, including but not limited to the true identity of the Lender, and the fraudulent misrepresentation as to the Mortgagee. The Defendants induced the Plaintiffs to enter into the transaction when there existed in the inducement and execution material representations that were false and were known to be false or were made recklessly, which inducement was reasonably acted upon by Plaintiffs and acted upon in reliance thereon and Plaintiffs suffered injury proximately due to such.

Pls.' Compl. 26-27, ¶ 27. With regard to their negligent supervision claim, Plaintiffs' allege:

> 44.   Defendants had a duty of care to supervise the actions of their employees and agents.

> 45.   Defendants['] employees and/or agents['] actions as alleged previously, were unlawful and violated Plaintiff[s]' property rights.

> 46.   Defendants knew or should have known that their employees and/or agents were acting unlawfully.

> 47.   As a result of the Defendants' negligent supervision, Plaintiffs [were] proximately injured by the unlawful acts of their employees and/or agents. An agency relationship exists between the individual defendants and the corporate defendants.

*Id.* 32, ¶ 44-47. In response to Defendants' motion, Plaintiffs also contend that Fannie Mae told them

that they would need to "miss payments on your loan as a prerequisite for us to help you" with a loan

modification. Pls.' Resp. 17. Plaintiffs acknowledge that the relationship of mortgagor and mortgagee does not ordinarily involve a duty of good faith but contend that Defendants owed them a duty of good faith to fully and accurately disclose information pertaining to Plaintiffs' home loan, because Plaintiffs relied on Defendants "to guide them through the process of servicing their home mortgage loan [and] properly represent the true holder/owner/beneficiary of the note." *Id.*

There are no factual allegations in the Complaint that support Plaintiffs' contention regarding the existence of a special relationship between them and Defendants; nor does the Complaint include allegations regarding a request by Plaintiffs to participate in a loan modification program. Even assuming that Fannie Mae made false or misleading representations to Plaintiffs regarding their eligibility for a home loan modification and had a duty to correct any such prior false or misleading statements, the court concludes that Plaintiffs' negligent misrepresentation and supervision claims fail because Plaintiffs' alleged injury is only the economic loss to the subject of the contract at issue, that is, the Note and Deed of Trust. *DeLanney*, 809 S.W.2d at 494; *see also Williams v. Federal Nat'l Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 443986, at *4 (N.D. Tex. Feb 13, 2012) (concluding that the plaintiffs' negligence claims, based on allegations that the defendants negligently performed their side of the agreement, negligently misrepresented the terms of the loan modification, and misrepresented to the plaintiffs that they would not foreclose on the property, arose out of alleged breaches of the loan modification or the defendants' negligence in their performance of the loan agreement, but, under Texas law, "the failure to perform the terms of a contract is a breach of contract, not a tort.") (quoting *Jim Walter Homes, Inc.*, 711 S.W.2d at 618). Accordingly, Plaintiffs' claims for negligent misrepresentation and supervision are barred by the economic loss doctrine, and Defendants are entitled to dismissal of these claims.

**Memorandum Opinion and Order - Page 39**

This, however, does not end the court's analysis because it appears that Plaintiffs have also attempted, albeit unsuccessfully, to plead a claim for fraudulent inducement, which is not subject to the economic loss rule. *Sharyland Water Supply Corp.*, 354 S.W.3d at 417. Although not barred by the economic loss rule, Plaintiffs' allegations in this regard are insufficient and fail to meet Rule 9(b)'s heightened pleading standard for fraud claims. Plaintiffs mention a "transaction" but it is unclear to which transaction Plaintiffs are alluding. Additionally, Plaintiffs fail to identify the allegedly fraudulent statements that were made, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Shandong Yinguang Chem. Indus. Joint Stock Co.*, 607 F.3d at 1032. To the extent Plaintiffs intended to assert a claim for fraudulent inducement, the court will permit them to file an amended complaint with the requisite particularity that satisfies Rule 9(b).

### C. DTPA

Defendants contend that "Plaintiffs do not appear to bring an independent claim for violation of the . . . [DTPA]. However, in connection with their negligent misrepresentation claim, Plaintiffs repeatedly allege that Defendants' actions were 'unfair and deceptive trade practices.'" Defs.' Br. 12. To the extent Plaintiffs do assert a DTPA claim, Defendants move to dismiss it on the grounds that Plaintiffs are not consumers because their claims are based entirely on the servicing of the loan they obtained from CTX. Plaintiffs did not respond to Defendants contention in this regard. The elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); Tex. Bus. & Com. Code

§ 17.50(a)(1). Whether a person qualifies as a consumer under the DTPA is a question of law for the court to decide. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.   San Antonio 2002, pet. denied). A person who seeks only to borrow money is not a consumer under the DTPA because lending of money, without more, does not involve a good or a service. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984). Likewise, the servicing of an existing loan and the request to modify an existing loan do not involve a good or service. *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011) (concluding that when a plaintiff seeks a modification of an existing loan, such action is "analogous to refinancing services" and does not qualify the plaintiff as a consumer under the DTPA); *Hansberger v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996 (Tex. App.   San Antonio July 29, 2009, pet. denied) (citing *Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 167 (Tex. App.   Austin 1996, no pet.) (finding loan servicing to be an ancillary service not contemplated by the DTPA); *Porter v. Countrywide Home Loans, Inc.*, No. V-7075, 2008 WL 2944670, *3 (S.D. Tex. July 24, 2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction.").

Even construing Plaintiffs' allegations in the light most favorable to them, the court concludes that they have not stated a claim upon which relief can be granted under the DTPA. Because any alleged DTPA claim by Plaintiffs arises out of their home mortgage loan, Defendants' servicing of the loan, or Plaintiffs' new contention regarding a requested modification of their home loan and does not involve the purchase or lease of goods or services, they do not qualify as consumers for purposes of the DTPA. Accordingly, to the extent Plaintiffs' intended to assert a DTPA, such claim fails as a matter of law, and Defendants are entitled to dismissal of this claim.

### D.     Injunctive Relief

Defendants contend that Plaintiffs are not entitled to injunctive relief because they have failed to plead a viable cause of action against Defendants. The court has already ruled on and denied Plaintiffs two requests for a TRO. Whether Plaintiffs may be entitled to later injunctive relief is premature, and the court will deny this portion of Defendants' motion.

## IV.     Amendment of Pleadings

Rule 15(a)(2) of the Federal Rules of Civil Procedure states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller* v. *Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiffs have not previously amended their pleadings; however, because the court has ruled that their FDCPA claim against CTX and their claims against Defendants for negligent misrepresentation and supervision and DTPA violations fail as a matter of law, no amount of artful or creative pleading of facts will permit them to state claims upon which relief can be granted. The court further determines that, insofar as Plaintiffs' declaratory judgment action and claims for unjust enrichment claim and CPRC violations are based on failure to record assignments, failure to produce the original wet ink signature Note, and "split-the-note" theories, they also fail as a matter of law.

**Memorandum Opinion and Order - Page 42**

The court therefore concludes that Plaintiffs cannot set forth any allegations to state claims based on failure to record assignments, failure to produce the original wet ink signature Note, or "split-the-note" theories; nor can Plaintiffs set forth any allegations to state claims for negligent misrepresentation and supervision and DTPA violations upon which relief can be granted.  Thus, further attempts to amend would these claims would be futile and unnecessarily delay the resolution of this action. Accordingly, the court will not allow Plaintiffs an opportunity to amend their pleadings as to their negligent misrepresentation and supervision and DTPA claims; nor will the court permit Plaintiffs to amend any claims that are based on failure to record assignments, failure to produce the original wet ink signature Note, or "split-the-note" theories.

The court, however, will permit Plaintiffs to file an amended complaint that corrects the deficiencies noted herein regarding their declaratory judgment action and claims based on alleged fraudulent misrepresentations and fraudulent inducement.   The court will also permit Plaintiffs to file an amended complaint to plead facts pertaining to their contention that the assignment to Fannie Mae was invalid, as well as their contention that Defendants or Fannie Mae did not have authority to make assignments or foreclose on the Property because the assignments were made without the requisite corporate resolutions, conducted in contravention Texas law, or made by MERS after the assignment to a nonMERS member.  Because the court has determined that Plaintiffs' recordation, failure to produce the original wet ink signature Note, and "split-the-note" theories are not recognized by Texas law, Plaintiffs' amended complaint **must not** contain any legal arguments or factual allegations based on these theories.

**Memorandum Opinion and Order - Page 43**

## V.    Conclusion

For the reasons herein stated, the court **grants in part and denies** in part Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). The court concludes that Plaintiffs have failed to state an FDCPA claim upon which relief can be granted against CTX and claims upon which relief can be granted for negligent misrepresentation and supervision, DTPA violations, and unjust enrichment against Defendants. The court therefore **grants** Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) as to these claims and **dismisses them with prejudice**. The court also **grants** Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) as to Plaintiffs' declaratory judgment action and claim for CPRC violations insofar as they are based on failure to record assignments, failure to produce the original wet ink signature Note, and "split-the-note" theories.[10] Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is in all other respects **denied**. In granting in part and denying in part Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court does not express any opinion regarding the strength of Plaintiffs' claims. Further, Plaintiffs are **directed** to file an amended complaint that addresses the deficiencies noted in this memorandum opinion and order by **April 5, 2013**, and with the standards set forth in this opinion.

**It is so ordered** this 15th day of March, 2013.

Sam A. Lindsay
United States District Judge

---

[10] As noted herein, the court's granting Defendants' motion in this regard does not dispose of Plaintiffs' declaratory judgment action or their CPRC claim.

**Memorandum Opinion and Order - Page 44**